# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

**VIOLA M. COMBS**                                **CIVIL ACTION**

**VERSUS**

**EXXON MOBIL CORPORATION**                    **No. 04-151-C**

### RULING ON MOTION FOR SUMMARY JUDGMENT

This matter is before the court on a Motion for Summary Judgment (Doc. No. 16) filed by defendant, ExxonMobil Corporation.  Plaintiff, Viola M. Combs, has filed opposition.  Jurisdiction is allegedly based on federal question, 28 U.S.C. § 1331.

### BACKGROUND

On July 23, 1990, plaintiff, Viola Combs ("Combs"),  began working at ExxonMobil Corporation ("ExxonMobil").  Combs began her career in the apprentice program as a trainee, but later became an assistant operator assigned to work in the Specialities area of the Distillation and Specialities Department.  In December, 1999, Combs was transferred from Specialities to work in the Pipestills unit of Distillation as an assistant operator.

In 2001 and 2002, Combs worked with another ExxonMobil employee, Norman Eger ("Eger"), an assistant operator as well as a 'step up' operator, on two special assignments which involved preparing heat exchangers for cleaning in the pipestills unit.  Each special assignment was for a period of several months.  Combs

Doc#1647

worked the second special assignment until June 20, 2002, when she was suspended for an admitted violation of a safety rule.  Subsequently, Combs was terminated on June 24, 2002.  Combs filed a grievance with regard to her termination and, following arbitration proceedings, her employment was reinstated on January 19, 2003.  Following reinstatement, Combs began working in the Specialties area, South Complex.

On March 23, 2003, Combs filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Louisiana Commission on Human Rights, alleging race and sex discrimination.  The EEOC issued a Dismissal and Notice of Rights  letter to Combs dated November 18, 2003.  On February 6, 2004, Combs filed suit in the 19th Judicial District Court, East Baton Rouge Parish, Louisiana, naming ExxonMobil as the defendant.    In her petition, Combs alleged that she was sexually harassed by a co-worker in violation of Title VII and was retaliated against.  ExxonMobil removed the suit to federal court.  Now, ExxonMobil moves for summary judgment, asserting that Combs' claims are insufficient as a matter of law.

## SUMMARY JUDGMENT

Rule 56©) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law."[1]  "The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of  'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."[2]  The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the nonmoving party's claim.[3]  The party opposing the motion may not rest on mere allegations or denials of pleadings, but must set forth specific facts showing a genuine issue for trial.[4]  To satisfy this burden, the nonmovant must "identify specific evidence in the record, and  articulate the 'precise manner' in which that evidence supported their claim.[5]  The court notes that only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[6]

---

[1] Fed.R.Civ.P. 56(c).

[2] **Stults v. Conoco, Inc.,** 76 F.3d 651, 655-56 (5th Cir.1996), (citing  **Skotak v. Tenneco Resins, Inc.**, 953 F.2d 909, 912-13 (5th Cir.), cert. denied, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) (quoting  **Celotex Corp. v. Catrett**, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265  (1986)).

[3] **Celotex Corp.,** 477 U.S. at 323-25.

[4] **Anderson v. Liberty Lobby, Inc.,** 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

[5] **Forsyth v. Barr**, 19 F.3d 1527, 1537 (5th Cir.), cert. denied, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

[6] **Anderson v. Liberty Lobby, Inc.**, 477 U.S. at 248.

## SEXUAL HARASSMENT CLAIM

ExxonMobil contends that Combs' sexual harassment claim does not meet the elements of a hostile work environment claim under Title VII.  ExxonMobil contends that Combs cannot show that the alleged conduct was unwelcome sexual harassment or that it affected a term, condition, or privilege of her employment. Additionally, ExxonMobil asserts that Combs failed to avail herself of the preventive or corrective opportunities available under ExxonMobil's policies.  In opposition, Combs asserts that she was sexually harassed by her co-worker, Eger, while working special assignments (first exchanger project and the second exchanger project) with him in 2001 and 2002.[7]

Title VII of the Civil Rights Act of 1964 prohibits workplace discrimination, including discrimination based on sex.[8]  "[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile work or abusive working environment."[9]   To set forth a *prima facie* case for a hostile work environment claim based on sexual harassment, a plaintiff must prove that (1) she belongs to a class protected under the statute (2) she was subject to unwelcome sexual harassment; 3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of her employment and (5) the employer knew

---

[7] According to ExxonMobil, Eger disputes all claims of sexual harassment.

[8] 42 U.S.C. § 2000e-2(a)(1)(2000).

[9] **Meritor Sav. Bank, FSB v. Vinson,** 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986).

4

or should have known of the harassment and failed to take prompt remedial action.[10]

## UNWELCOME SEXUAL HARASSMENT/ AFFECTED TERM, CONDITION OR PRIVILEGE OF EMPLOYMENT

First, ExxonMobil contends that Combs cannot show the harassment complained of affected a "term, condition or privilege of employment" or that she was subject to unwelcome sexual harassment.

For the sexual harassment to rise to the level of actionable hostile work environment conduct, "it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.[11]'" For harassment to affect a term, condition, or privilege of employment, it must be both objectively and subjectively abusive.[12] Objectively offensive means that a reasonable person would find it hostile and abusive, and subjectively offensive means that the victim perceived it to be so."[13]   To determine whether conduct was objectively abusive or hostile, the court looks at the totality of the circumstances, including (1) the frequency of the conduct; (2) its severity; (3) whether it is physically threatening or humiliating as opposed to a mere offensive utterance; (4) whether it unreasonably interferes with an employee's work

[10] **DeAngelis v. El Paso Mun. Police Officers Ass'n,** 51 F.3d 591, 593 (5th Cir. 1995), cert. denied, 516 U.S. 974, 116 S.Ct. 473, 133 L.Ed.2d 403 (1995).

[11] **Meritor,**  477 U.S. at 67.

[12] **Hockman v. Westward Comms., LLC,** 407 F.3d 317, 325 (5th Cir. 2004).

[13] **Shepherd v. Comptroller of Pub. Accounts of the State of Tex.,** 168 F.3d 871, 874 (5th Cir.), cert. denied, 528 U.S. 963, 120 S.Ct. 395, 145 L.Ed.2d 308 (1999)(citing **Harris v. Forklift,** 510 U.S. 17, 21-22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

performance, and (5) whether the complained-of conduct undermines the plaintiff's workplace competence.[14]  The Fifth Circuit has recognized that "[a]ll of the sexual hostile environment cases decided by the Supreme Court has involved patterns or allegations of extensive, longlasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiffs' work environment.[15]  "'A recurring point in [Supreme Court] opinions is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"[16]

In the case at hand, Combs alleges that she was sexually harassed by Eger while working on the two exchanger projects.   Combs and Eger worked the first exchanger project around July, 2001 to November, 2001.  They worked the second exchanger project around April, 2002 through June 20, 2002 (Combs' date of suspension).

In her deposition, Combs stated that during the exchanger projects, the following occurred: 1) Eger asked her "Do you want me" on more than three occasions; 2) Eger asked her "Why don't I find him attractive"; 3) Eger would say "I want you"; 3) Eger stated "You arouse me"; 4) Eger stated "I know it's not right, but sometimes at night I dream about you. I wish I was the sweat that rolls down your

---

[14] **Harris,** 510 U.S. at 23.

[15] **Indest v. Freeman Decorating, Inc.,** 164 F.3d 258, 264 (5th Cir. 1999).

[16] **Shepherd,** 168 F.3d at 874 (quoting **Faragher v. City of Boca Raton,** 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662  (1998).

neck between your breasts"; 5) Eger made the statement a lot – "I don't know why I want to have sex with you"; 6) Eger stated, at least twice in 2002, he believed he could wear me down in my determination to have a platonic relationship; 7) in May, 2002, Eger stated that "You know what, that sweat looks so good, I can lick the sweat off of you"; 8) on two occasions, Eger positioned himself with his genitals pressing against Combs' buttocks when the two of them had to open chain valves together; 9) during the 2001 exchanger assignment, lots of times, Eger stated "That sweat rolling down your neck, you look so sexy. It's glistening off your neck"; 10) at least every other Friday, he would ask "Why can't I come over to your house?"; 11) Eger tried to hug her on at least two occasions, once at her home and once in the control room at work; and 12) on one occasion, Eger touched her breasts.[17]

The Court finds that the above comments made to Combs were offensive and sophomoric; however, they were not sufficiently severe or pervasive so as to alter a "term, condition, or privilege" of employment.  The allegations here involve far less objectionable circumstances than those for which courts afford relief.[18]  Besides, the Fifth Circuit has held that conduct similar to the case at hand was not severe or

---

[17] See Combs' Deposition, Rec. Doc. No. 23 (under seal).

[18] **Farpella-Crobsy v. Horizon Health Care,** 97 F.3d 803, 806 (5th Cir. 1996)(finding that frequent egregious comments about sexual proclivity created hostile environment); **Waltman v. International Paper Co.,** 875 F.2d 468, 478 (5th Cir. 1989)(concluding hostile environment existed where female employee was sexually groped repeatedly); **Hall v. Gus Const. Co.,** 842 F.2d 1010, 1012 (8th Cir. 1988)(finding hostile environment where male coworkers cornered women and rubbed their thighs, grabbed their breasts, and held a woman so that a man could touch her).

pervasive so as to alter a "term, condition, or privilege" of employment in the cases of **Hockman v. Westward,** 407 F.3d 317 (5th Cir. 2004) and **Shepard v. Comptroller of Pub. Accountants,** 168 F.3d 871 (5th Cir. 1999).[19]

The court concludes that the alleged instances where Eger touched Combs, twice tried to hug her, and pressed his body against Combs' body and any other alleged unwelcomed physical-touching were neither severe nor physically threatening, though to a reasonable person the conduct would be quite unwelcome. However, the court concludes that Combs' deposition does not reflect that she found the conduct subjectively offensive.

Combs' testimony further undermines her claims of sexual harassment.  For example, during both the 2001 and 2002 exchanger projects, Combs stated that she and Eger went to lunch together almost on a daily basis, by going to the ExxonMobil cafeteria together, picking up lunch and eating it together.[20]

Further, in direct conflict with her claim of unwelcome sexual harassment, is the following deposition testimony wherein she stated: 1) after the first week on the first exchanger project with Eger, Eger came over to Combs' house and drank a

---

[19] See **Hockman**, 407 F.3d at 328, (alleged harasser commented to plaintiff about another employee's body, he slapped plaintiff on the behind with a newspaper, he grabbed and brushed against plaintiff's breasts and behind, he once held her cheeks and tried to kiss plaintiff, he asked plaintiff to come to his office early so that they could be alone, and he once stood in the door of the bathroom while she was washing her hands); **Shepherd**, 168 F.3d at 872 (alleged harasser commented that plaintiff's elbows were the same color as her nipples, rubbing his hands down her arm from her shoulder to her wrists,  commented on the size of plaintiff's thighs while pretending to look under her dress, and attempting to look down plaintiff's clothing).

[20] Combs' Deposition, p. 168.

8

beer; 2) about midway through the first exchanger project, on two occasions, Combs and Eger went to a nightclub along with other co-workers; 3) during the first month, Eger gave Combs a ride home a couple of times when Combs' vehicle was not operating; 4) Eger took Combs and her nephew to a gun show and helped Combs purchase a gun, thereafter, they went to a gun range together; 5) on one occasion, Eger came over to Combs' home to make mixed drinks; 6) in June 2002, Eger attended a barbecue at Combs' home; and 7) during the 2002 special assignment, Combs attended church with Eger and received a Bible from Eger.[21]   Combs' testimony reflects that, on two occasions, Combs spoke with Eger and helped convince Eger to work the second exchanger assignment with her.[22]

The court does not find it logical that Combs would be sexually harassed to the extent required by the law and still allow the above actions to take place; particularly helping recruit Eger to work the second exchanger assignment with her. Considering, all the above circumstances, the court finds that Combs has not established that the conduct complained of was unwelcomed sexual harassment nor has she established that the conduct was so severe or pervasive as to affect the terms, conditions or privileges of her employment.

In addition, the evidence supports a finding that Eger's conduct did not unreasonably interfere with Combs' work performance, nor did it undermine Combs'

---

[21] See Combs' Deposition.

[22] Comb's Deposition, pp. 159-166

workplace competence.[23] Combs testified that she believed her performance on the exchanger assignments "was good."[24] Combs also testified that her performance rating during the exchanger assignments was always good.[25] She testified that she and Eger worked the first exchanger project well together, and there were no safety issues.[26] By declaration, Jed Sachse, the supervisor of Combs and Eger during the special assignments, stated that he never observed any inappropriate conduct by Eger toward Combs.[27] Mr. Sachse stated that throughout both the 2001 and 2002 special  assignments, Combs and Eger seemed to get along well, and they acted like best friends.[28] Based on the above, the court finds that Combs sexual harassment claim lacks merit.[29]


## RETALIATION CLAIM

ExxonMobil asserts that Combs cannot establish a claim for retaliation.  In

---

[23] See **Butler v. Ysleta Indep. Sch. Distr.,** 161 F.3d 263, 270 (5th Cir. 1998)(holding that along with other factors, a "plaintiff must show that implicit or explicit in the sexual content is the message that plaintiff is incompetent because of her sex").

[24] Combs' Deposition, p. 159.

[25] **Id.**

[26] **Id.** at 167.

[27] Declaration of Jed Sachse, ¶ 5.

[28] **Id.**

[29] ExxonMobil also contends that Combs' sexual harassment claim fails because Combs cannot show that ExxonMobil failed to take prompt remedial action.  Because of the court's finding that Combs' sexual harassment claim lacks merit, the court will not address this contention.

10

opposition, Combs claims that ExxonMobil retaliated against her by 1) terminating her and/or 2) reinstating her in an undesirable position.

Title VII makes its unlawful for any employer to retaliate against an employee for bringing a charge under Title VII.[30]  Retaliation claims based on circumstantial evidence are reviewed under the burden-shifting framework established in **McDonnell Douglas Corporation v. Green**.[31]  Under the **McDonnell Douglas** framework, the plaintiff must establish a *prima facie* case of retaliation.[32]  To establish a *prima facie* case, the plaintiff must show: (1) plaintiff engaged in an activity protected by Title VII; (2) ExxonMobil carried out an adverse employment action; and (3) a casual nexus exists between plaintiff's protected activity and ExxonMobil's adverse action.[33]  If the plaintiff establishes a *prima facie* case, then a presumption of discrimination arises and the burden shifts to the defendant to articulate – but not prove – a legitimate nondiscriminatory reason for the adverse employment action.[34]  If the defendant meets its burden of production, then the presumption of intentional discrimination is rebutted and the burden shifts back to the plaintiff to show that the reason proffered by the defendant is merely pretext for

---

[30] See 42 U.S.C. § 2000e-3(a).

[31] 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

[32] See **Septimus v. Univ. of Houston,** 399 F.3d 601, 607 (5th Cir. 2005).

[33] See **Chaney v. New Orleans Pub. Facility Mgmt., Inc.,** 179 F.3d 164, 167 (5th Cir. 1999), cert. denied, 529 U.S. 1027, 120 S.Ct. 1439, 146 L.Ed.2d 327 (2000).

[34] See **Evans v. City of Houston,** 246 F.3d 344, 350 (5th Cir. 2001).

discrimination.[35]

RETALIATORY DISCHARGE CLAIM

Combs contends that her termination was in retaliation for Eger trying to cover up his inappropriate conduct.  ExxonMobil contends that Combs cannot show retaliation because Combs cannot establish that she engaged in a protected activity. ExxonMobil also contends that Combs cannot establish a causal connection between any purported protected activity and her discharge.

In considering whether Combs sets forth evidence of a protected activity she engaged in, the court finds that the evidence does not reveal that Combs engaged in any protected activity which resulted in her termination. Combs presents no evidence showing that she engaged in any protected activity (reporting sexual harassment) and she was terminated as a result of the protected activity.  Instead, the evidence reflects that Combs was terminated because she violated a safety rule, which was a violation of ExxonMobil's Posted Offense and Safety Stand-Down policy.

In addition, Combs only speculates that Eger reported her safety violation to cover up his alleged sexual harassment of Combs.  Combs provides no evidence to support her claim.   Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary

---

[35] **Id.** at 350.

judgment.[36]  Because the court finds that Combs cannot show any protected activity she engaged in that resulted in her retaliatory discharge, the court finds that Combs fails to prove a claim of retaliatory discharge.

RETALIATORY ASSIGNMENT UPON REINSTATEMENT

ExxonMobil contends that Combs' work assignment after reinstatement is not an adverse employment action. In opposition, Combs contends that her work assignment to an undesirable area of the Refinery was in retaliation for filing an EEOC charge.

In **Burlington Northern & Santa Fe Railway Co. v. White,** the Supreme court clarified the requirements for proving retaliation.[37] In this case, the Supreme Court rejected the approach taken by the Fifth Circuit and other circuits which required plaintiffs to demonstrate an "ultimate employment decision" to satisfy the "adverse employment action" element of a retaliation claim.[38]  Now, the Court requires that in order for an employer's acts to constitute actionable retaliation: "[a] plaintiff must show a reasonable employee would have found the challenged action materially adverse, which ... means it might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[39]

---

[36] **Bridgmon v. Array Sys. Corp.,** 325 F.3d 572, 577 (5th Cir. 2003); **Hugh Symons Group, plc v. Motorola, Inc.,** 292 F.3d 466, 468 (5th Cir. 2002).

[37]  U.S.      ,126 S.Ct. 2405 (2006).

[38] **Id.** at 2414.

[39] **Id.** at 2415.

In this case, Combs claims that her work assignment after reinstatement to an undesirable area of the Refinery was in retaliation for filing an EEOC charge. In **Burger,** the Fifth Circuit held a transfer to be purely lateral where the new position had "the same job title, benefits, duties, and responsibilities" as the old position.[40]

On January 19, 2004, Combs was reinstated as an assistant operator, which is the same job title she had prior to termination.[41]   Combs received the same compensation and benefits as she had previously received.[42]   Anita Riddle, department head of the Distillation and Specialities Department, made the decision where to assign Combs, once she was reinstated.[43]  Ms. Riddle made the decision to place Combs in the South Complex of the Specialties area of D&S Department as an assistant operator.  By declaration, Ms. Riddle indicated that Combs was assigned to this area because she had the skill to work in the position, and Ms. Riddle wanted Combs to have a fresh start.[44]  Ms. Riddle stated that Combs has comparable job duties to the ones she performed on the pipestills unit.[45]   Combs offers no evidence to contradict ExxonMobil's evidence. Thus, the court finds that this was a purely lateral transfer and that a reasonable employee would not have

---

[40] **Id.**

[41] ExxonMobil's Exhibit, Declaration of Anita Riddle, ¶¶ 4 and 5.

[42] ExxonMobil's Exhibit, Declaration of Elmo Savell, Human Resources Advisor for the Baton Rouge Refinery, ¶ 6.

[43] **Id.**  at 5.

[44] ExxonMobil's Exhibit, Declaration of Anita Riddle, p. 2, ¶ 2.

[45] Id.

found the transfer action materially adverse.  The court does not find that the transfer would have dissuaded a reasonable worker from making or supporting a charge of discrimination.  Consequently, Combs has failed to make out a claim of retaliation based on her work assignment.

## **CONCLUSION**

Accordingly, for the above and foregoing reasons,

IT IS ORDERED that the Motion for Summary Judgment filed by defendant, ExxonMobil Corporation, will be GRANTED.

Signed in Baton Rouge, Louisiana, on November 7, 2007

**RALPH E. TYSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

Doc#1647